FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 53

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43295-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| STEVEN BURKE MCGRAW, | |
| Appellant. | |

MAXA, J. — Steven McGraw appeals his third degree assault conviction with a domestic violence finding for strangling his ex-girlfriend, Erin Johnson. Johnson reported the assault to the police and provided a signed, handwritten statement that was inconsistent with her trial testimony in one respect. The trial court allowed McGraw to use Johnson's statement to impeach her credibility. McGraw argues that the trial court erred in refusing to admit the statement for substantive purposes under ER 801(d)(1)(i). However, McGraw has not shown that the alleged error would have affected the trial outcome. Because admitting the statement as substantive evidence would not have provided McGraw with any significant benefit beyond what he accomplished using the statement for impeachment, any error in refusing to admit the statement was harmless. Accordingly, we affirm without deciding the propriety of the trial court's evidentiary ruling.

## FACTS

Johnson and McGraw dated for approximately three years, most of which time they lived together, and they had a son together. Johnson moved out in October 2010, but she and McGraw continued to have frequent contact and an on and off relationship.

Johnson went to McGraw's house in the early morning hours of December 12, 2010. While Johnson and McGraw were in bed together, McGraw squeezed Johnson's neck three times. The first two times McGraw let go, but the third time he squeezed until Johnson passed out.

Johnson telephoned the police the following day to report the assault by McGraw. A police officer contacted Johnson at her home and took her statement. Johnson provided the police officer a handwritten statement, which she signed under penalty of perjury. Johnson's written statement was as follows:

> I showed up at his house around 2 am due to him calling me[.] I thought he was going to harm himself. So I stayed while his friends left[.] He wasn't making a[ lot] of sense and he grab[b]ed my [throat] making [it] so I could not breath[e] or talk[.] I was able to pull his hand off for a second but he kept grabbing my [throat.] I asked him to stop and told him everything was going to be ok.

Ex. 16. The State charged McGraw with second degree assault, alleged to be a domestic violence incident under RCW 10.99.020.

At trial, Johnson testified that she went to McGraw's house the evening of the assault because he called and invited her over, and that she obliged because they were friends. She testified that she stayed at McGraw's house even after the assault because she was afraid that he would harm himself. On cross-examination, defense counsel asked Johnson about the perceived inconsistency between stating in the written statement that she went to McGraw's house because

2

she was afraid he would harm himself and her trial testimony that she went to his house because he invited her and it was not until the next morning that she was afraid he would harm himself.

Johnson testified that she did not remember reporting or writing that she went to McGraw's house because she was afraid that he would harm himself. She first admitted that her written statement was not accurate. She then explained that the statement was true, but some things were in the wrong order. But she also said that the statements were not in the wrong order; they were just bits and pieces of what she could remember at the time. Johnson explained that she was in shock and was not thinking clearly when she wrote the statement, although she tried to remember to the best of her ability. Nevertheless, she acknowledged that she signed the statement declaring under penalty of perjury that it was true and correct.

Defense counsel then sought to admit Johnson's written statement under ER 801(d)(1)(i) as substantive evidence. After considering extensive argument outside the presence of the jury, the trial court refused to admit the statement as substantive evidence.

Because the State's strangulation expert relied on Johnson's written statement in reaching her conclusions, defense counsel was able to have the expert read the statement to the jury. But the trial court instructed the jury that the expert witness's testimony regarding the out of court statement was to be used for the limited purpose of assisting the jury in determining the weight and credibility of the expert witness's testimony.

In closing argument, defense counsel used Johnson's written statement to attack her credibility. Counsel used the inconsistency between Johnson's statement and her trial testimony to argue that Johnson was not a credible witness because her story changed every time she told it.

A jury found McGraw not guilty of second degree assault, but guilty of the lesser included offense of third degree assault with a domestic violence finding. McGraw appeals.

ANALYSIS

The trial court allowed McGraw to use Johnson's written statement for impeachment purposes. McGraw claims that the trial court abused its discretion by refusing to allow Johnson's written statement to be used for substantive purposes under ER 801(d)(1)(i). The State responds that even if the statement should have been admitted as substantive evidence, the evidentiary error was harmless because McGraw would not have gained anything from admission of the written statement for substantive purposes that he did not accomplish through cross-examination of Johnson on the contents of her statement. We agree with the State that the alleged error is harmless, and we resolve the case on that basis without deciding whether or not the statement should have been admissible for substantive purposes under ER 801(d)(1)(i).

A trial court's evidentiary error is not reversible if it does not prejudice the defendant. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). Where the error is from a violation of an evidentiary rule rather than a constitutional mandate, courts do not apply the more stringent harmless error beyond a reasonable doubt standard. *Bourgeois*, 133 Wn.2d at 403. Rather, error is not prejudicial unless, with reasonable probabilities, the trial's outcome would have differed had the error not occurred. *Bourgeois*, 133 Wn.2d at 403. McGraw has not shown that violation of ER 801(d)(1)(i) was a constitutional violation. Therefore, we apply the non-constitutional harmless error standard.

Johnson's statement was unhelpful to McGraw as substantive evidence. Whether Johnson went to McGraw's house because she was afraid he might harm himself or she did not have that fear until the next morning is immaterial to whether McGraw assaulted her. If anything, the statement was harmful to McGraw because it confirmed that the assault occurred and was consistent with other portions of Johnson's testimony. The statement was valuable to

No. 43295-1-II

McGraw only for its tendency to cast doubt on Johnson's credibility because of the inconsistency between the statement and her trial testimony. And McGraw successfully used the statement for impeachment purposes without the need for the statement to be admitted as substantive evidence.

McGraw argues that if the statement had been included in the admitted exhibits given to jury his impeachment would have been more potent. Although we understand McGraw's desire to further draw the jury's attention to the inconsistent statement, there is no indication that he would have gained any significant benefit from allowing the jury to review the statement during deliberations beyond what he accomplished through cross-examination of Johnson on the contents of her statement. As a result, we hold that the trial court's refusal to admit Johnson's statement for substantive purposes did not reasonably affect the trial's outcome.

Even if the trial court's refusal to admit Johnson's statement for substantive purposes was error, we hold that the error did not prejudice McGraw. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.

5